Lapeyre v. Paul et al.

---

ALEXANDER LAPEYRE, Respondent, *v.* GABRIEL PAUL *et al.*, Appellants.

1. *Lands and land titles — Tenants in common — Adverse possession by one as against others — Limitations, statute of.* — One of a number of tenants in common took the sole possession of land and held the same continuously for more than ten years, claiming the same as his own exclusive property and taking the rents and profits to his own exclusive use. The other co-tenants were aware of his possession and his claim, but set up no claim to the adverse possession, and, on the contrary, manifested a perfect and entire acquiescence. *Held,* that in this State the co-tenant in possession will be considered as having created a statutory bar against the title of the others.

2. *Lands and land titles — Tenants in common — What act will show adverse possession by one against the others.* — The presumption of law is that the possession of one tenant in common is the possession of the co-tenants as well.

Unity of possession is of the very essence of tenancy in common. Hence, in consequence of this legal presumption, to establish the title of one co-tenant against another, there must be on his part outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them.

*Appeal from St. Louis Circuit Court.*

*T. T. Gantt*, for appellants.

Ordinarily, the possession of one tenant in common is not adverse to his co-tenant. It may, however, become so, and does become so the moment there is an assertion of exclusive ownership on the part of the person in possession — the moment that he gives notice, expressly or impliedly, to the person *out* of possession that the possession held by him is of an adversary nature. And if, from that moment, the statutory period of limitations elapses before the assertion of the title of the holder of any undivided interest, such title is barred — is not held for him but against him; which is only saying that adverse possession for ten years bars a tenant in common as well as a stranger, or that a tenant in common is on the same footing as a stranger in respect to possession. Acquiescence in such a claim of exclusive ownership for the period of limitations is a complete bar to the subsequent assertion of the ousted tenant's title, though he was originally tenant in common. (See Warfield v. Lindell, 30 Mo. 282.)

*J. C. Moody*, for respondent.

I. The defendants and E. W. Paul being tenants in common, the possession of one was the possession of all in support of the common title, until an actual ouster be shown, or circumstances from which one can be inferred or presumed. Mere reception of all the rents, without any claim by E. W. Paul, or any declaration to him or others, will not be held sufficient to raise any presumption or inference of an ouster. Here, while the *onus probandi* is upon the defendants, there is no proof of any possession even adverse to E. W. Paul, no claim by him, and no

exclusion of him, or declaration of any intention to exclude him; and his long-continued insolvency and the peculiar provisions of Therese C. Chouteau's deed explain this.

II. Seventeen years' quiet possession will not raise the presumption of an ouster. In a New York case quoted in Warfield v. Lindell, 30 Mo. 273, it was held that an exclusive possession for twenty-seven years was not sufficient to authorize the presumption of an ouster, even where there had been an actual resistance to plaintiff's entry and claim. (Norwich v. Wright, 24 Wend. 221.) In some of the cases quoted below it has been held that an occupancy by one joint tenant or tenant in common, and levying a fine, was not sufficient to raise the presumption of an ouster. In one case, I think in Pennsylvania, it was held that forty-six years was not sufficient without other circumstances. (See, generally, 5 Burr. 2604; 1 East, 277; Ang. Lim. 422–3; McClurg v. Ross, 5 Wheat. 124; Warfield v. Lindell, 30 Mo. 273; 38 Mo. 561; Johnson v. Prewitt, 22 Mo. 554; Knowlton v. Smith, 36 Mo. 507; Cole v. Roe, 39 Mo. 411; Scruggs v. Scruggs, 41 Mo. 242; Doan v. Sloan, 42 Mo. 106.)

WAGNER, Judge, delivered the opinion of the court.

The plaintiff brought his action of ejectment against Gabriel R. Paul and his tenants to recover a lot on Main street in the city of St. Louis. Both parties claim under a common grantor. The plaintiff claims to derive title by virtue of a sheriff's deed issued upon a judgment against Edmund W. Paul. The property had been conveyed originally to Rene Paul, father of the defendant, to the use of himself for life, with remainder to his seven children in fee. One of these children was a minor at the time of his death, which occurred in 1847 or 1848. Rene Paul died in 1851, leaving a will. From all his children except the minor, Rene Paul obtained in his lifetime quit-claim deeds conveying their estate in remainder in the property to him. Edmund W. was one of the children, and conveyed his estate in remainder. One-sixth of the remainder having vested in the minor, and remaining undisposed of, passed by inheritance to the remaining six children of Rene Paul. Edmund W., therefore, claiming

through the deceased, would be entitled to one thirty-sixth of the remainder. Rene Paul having devised all his real estate to his executor, with power of sale, the property was put up and sold by the executor in 1853, and Gabriel R. Paul, the defendant, became the purchaser. The deed from the executor is dated January 19, 1853. It was in evidence that from the death of Rene Paul his executor was in the exclusive pernancy of the rents and profits; that from and after the date of the deed to him Gabriel R. Paul, the defendant, had continued, notorious, exclusive and open possession of the lot under the deed; that Edmund W. had lived all his life in St. Louis, and still lived there; that he made no claim to any part of the rents or profits of the lot; that he knew of the exclusive possession and claim of the lot by Gabriel R. during the entire time from 1853 to the commencement of the action — a period of about sixteen years — and acquiesced in it.

The cause was tried before the court without the intervention of a jury, and upon the foregoing facts the court declared the law to be that "if the court, sitting as a jury, shall believe from the evidence that after the death of Rene Paul the land in controversy was held in possession by the executor of Rene Paul, under his will given in evidence, until the same was sold and conveyed by the executor to G. R. Paul by the deed read in evidence, and that immediately upon the making of that deed the said G. R. Paul entered into possession thereunder of the land therein described, and has since that time to the commencement of this suit held possession thereof continuously, claiming the same as his own exclusive property and taking the rents and profits to his own exclusive use; that Edmund W. Paul was, at the time of the death of Rene Paul, living in the city of St. Louis, and has ever since lived here; that he was aware of the possession of the said land by G. R. Paul, as supposed in this instruction, and that the said G. R. Paul claimed the same as his exclusive property; that the said E. W. Paul acquiesced in said possession and claim by said G. R. Paul, and at no time prior to the commencement of this suit set up any claim to the said land, then the possession of the said land by the said G. R. Paul has

ripened into a title as against the said E. W. Paul and those claiming under him."

The court then found a verdict for defendant, and rendered judgment thereon. This judgment was reversed at General Term, and defendant appealed the case to this court.

In some States it has been held that a sole possession by a tenant in common for a period covering the statutory limitation will constitute a bar. But this doctrine has not generally prevailed. It fails to notice the recognized distinction which exists between adverse possession in tenancies in common and any other case of adverse possession, as between strangers. The law on the subject of ouster and adverse holding by one tenant in common as against his co-tenant, was fully examined and the authorities reviewed by this court in the case of Warfield v. Lindell, 30 Mo. 272, and 38 Mo. 561.

There is a marked difference in the rules of evidence as applicable to a case of this kind, and to a case of adverse possession — a disseizin in general. The presumption of law is that the possession of one tenant in common is the possession of the co-tenants as well. Unity of possession is the very essence of a tenancy in common. That one tenant in common may disseize another is established beyond all doubt, but, in consequence of the legal presumption, acts of exclusive possession, which in case of a stranger would be deemed adverse and *per se* a disseizin, are, in cases of tenancies in common, susceptible of explanation consistently with the real title. They are not necessarily inconsistent with the unity of possession existing in such a case. It is for this reason that it depends upon the intent with which the acts of ownership are done, and upon their notoriety and essential character, whether they will be such as to break and dissolve the unity of possession, constitute an adverse possession as against the co-tenants, and amount to an ouster or disseizin. For this purpose there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their import to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them. (Warfield v. Lindell, *supra*,

and cases cited.) It is not necessary that actual notice of an adverse holding and disseizin be brought home to the co-tenant; it is sufficient if the acts are overt and notorious; and then, if the co-tenants are ignorant of their rights or neglect them, they must suffer the consequences. Tested by these principles, we think that the instruction properly declared the law. The court, by its verdict, necessarily found the facts to be that immediately upon the making of the deed, G. R. Paul entered into the possession of the land, and has since held the possession thereof continuously, claiming the same as his own exclusive property, and taking the rents and profits to his own exclusive use; that E. W. Paul was aware of G. R. Paul's possession, and that he claimed the lot as his sole and exclusive property; that no claim was set up to the adverse possession, but, on the contrary, ·a perfect and entire acquiescence was manifested. The acts and possession of G. R. Paul were overt, notorious and adverse, as found by the verdict, and as they continued for more than a sufficient time to create a a bar by the statute of limitations, they must be regarded as conclusive of the title.

It results, therefore, that the judgment at General Term must be reversed and the judgment of the Special Term affirmed. The other judges concur.